STATE OF CONNECTICUT *v.* ONE 1993 BLACK
KENWORTH W-900 TRUCK AND ONE TRAILER
(14467)

Spear, Hennessy and Cretella, Js.

---

[4] The inevitable discovery exception to the exclusionary rule is recognized by both our state and federal courts.

Argued March 19—officially released June 18, 1996

*Milo J. Altschuler*, with whom, on the brief, was *Martin O'Neill*, for the appellant (defendant owner).

*Kimberly P. Massicotte*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Joseph Rubin*, assistant attorney general, for the appellee (state).

SPEAR, J. The defendant, Michael Pellegrino, is the owner of a 1993 black W-900 Kenworth Truck and attached trailer (vehicle) that were the subject of in rem proceedings by the state pursuant to General Statutes § 22a-250a.[1] He appeals from the judgment of the trial

[1] General Statutes § 22a-250a provides in pertinent part: "Forfeiture of vehicles used in violation of certain environmental laws. (a) When any

court ordering the forfeiture of the vehicle. On appeal, he claims that the trial court improperly (1) found that his vehicle was seized as a result of a lawful arrest, (2) found that, in a forfeiture action, the appropriate burden of proof is by a preponderance of the evidence, and (3) failed to find that the forfeiture of his vehicle constituted an excessive fine in violation of the eighth amendment to the United States constitution. We affirm the judgment of the trial court.

The trial court found the following relevant facts. In the early morning of October 26, 1994, Bridgeport police officer Juan Gonzalez observed the defendant behind a store on Main Street in Bridgeport. Gonzalez observed that the defendant was unloading "approximately fifteen to twenty feet" of debris from his vehicle. The debris consisted of construction and demolition material such as shingles, wood and roofing materials. The vehicle was parked in such a way that it had to have been backed in.

The trial court also found that, at the scene, the defendant made various inconsistent statements to police officers evidencing a consciousness of guilt. Although the trial court did not discuss the content of the statements, we note that the transcript shows that the defendant first told Officer Vincent Ingrassia that

vehicle used as a means of disposing of hazardous waste without a permit . . . or as a means of committing a violation of any of the provisions of section 22a-208a, section 22a-208c, subsection (c) or (d) of section 22a-250 or section 22a-252, has been seized as a result of a lawful arrest or lawful search, pursuant to a criminal search and seizure warrant issued under authority of section 54-33c, which the state claims to be a nuisance and desires to have destroyed or disposed of in accordance with the provisions of this section, the judge or court issuing any such warrant or before whom the arrested person is to be arraigned shall, within ten days after such seizure, cause to be left with the owner of . . . the vehicle so seized . . . a summons notifying the owner and any such other person claiming such interest and all others to whom it may concern to appear before such judge or court . . . ."

he had stopped his vehicle because a passenger had alerted him that material was spilling from the back. Ingrassia further testified that, in response to the defendant's statement, he drove the route that the defendant had traveled but could not locate any debris. Other testimony revealed that the defendant told an emergency response coordinator from the department of environmental protection that the debris was from a demolition project in Jamaica, New York, and was destined for RESCO, a Bridgeport incineration facility that operates in accordance with environmental laws. The defendant, however, did not produce, upon request, the bill of lading required to dump material at RESCO. In addition, the RESCO plant manager testified that the facility did not accept demolition debris.

Gonzalez arrested the defendant on the morning of October 26, 1994, and issued him a misdemeanor summons. The summons listed the offense as "prohibited dumping" and cited General Statutes § 22a-250 (b), which provides that "[a]ny person who violates any provision of subsection (a) of this section *shall be deemed to have committed an infraction.*" (Emphasis added.) Section 22a-250 (a),[2] however, governs prohibited littering and not prohibited dumping. At the approximate time that the defendant was issued the summons, his vehicle was seized.

On November 3, 1994, the defendant was charged in a substitute information with illegal dumping in violation of General Statutes § 22a-226a.[3] On that day, the

---

[2] General Statutes § 22a-250 (a), which defines the offense of littering, provides in pertinent part that "[n]o person shall throw, scatter, spill or place or cause to be blown, scattered, spilled, thrown or placed, *or otherwise dispose of any litter* upon any public property in the state or upon private property in this state not owned by him . . . ." (Emphasis added.)

[3] General Statutes § 22a-226a provides in pertinent part: "Any person who knowingly violates . . . subsection (c) or (d) of section 22a-250 . . . shall be fined not more than twenty-five thousand dollars per day for each day of the violation or imprisoned not more than one year or both. . . ."

state also filed a substitute complaint pursuant to General Statutes § 22a-250a for forfeiture of the vehicle. In the complaint, the state alleged that the vehicle was used as a means of committing a violation of §§ 22a-250 (c)[4] and 22a-250 (d).[5] The trial court, in ordering that the vehicle be forfeited to the state, found that the defendant was arrested for a misdemeanor, that the vehicle was seized as a result of a lawful arrest, and that the appropriate burden of proof in a forfeiture action was a preponderance of the evidence.[6] The trial

[1] General Statutes § 22a-250 (c) provides in pertinent part: *"No person shall dump,* as defined in subdivision (12) of section 22a-248, any material upon any public property in the state or upon private property in this state not owned by him except when such property is designated by the state or any political subdivision thereof for dumping and such person is authorized to use such property or such property is a licensed facility for such purpose. . . ." (Emphasis added.) General Statutes § 22a-248 (12) defines "dump" as discarding "(A) more than one cubic foot in volume of litter at one time or (B) furniture, garbage bags or contents thereof or other similar materials. Material which has been placed at a location with an intent to leave it indefinitely at such location, or material which has not been removed from a location within forty-five days, is deemed discarded."

[5] General Statutes § 22a-250 (d) provides in pertinent part: *"No person shall dump,* as defined in this subsection, any material upon any public property in the state or upon private property in this state not owned by him except when such property is designated by the state or any political subdivision thereof for dumping and such person is authorized to use such property or such property is a licensed facility for such purpose. . . . As used in this subsection 'dump' means to discard automobiles or automobile parts, large appliances, tires, bulky waste, hazardous waste as defined in section 22a-115, or any other similar material." (Emphasis added.)

[6] We note that the trial court issued its decision orally yet failed to sign the transcript of the decision in contravention of Practice Book § 4059 (a). That section provides that if the decision of the court is presented orally, "the decision shall be recorded by a court reporter and, if there is an appeal, the trial judge shall order the decision transcribed and the transcript of the decision *shall be signed by the trial judge* and filed in the trial court clerk's office." (Emphasis added.) Section 4059 (b) further provides that "[i]f the trial judge fails to comply with paragraph (a), the appellant may file with the appellate clerk a notice [of noncompliance]. . . . The trial court shall thereafter comply with paragraph (a)." In the present case, despite the trial court's failure to comply with § 4059 (a), the defendant never filed a notice of noncompliance seeking the trial court to comply with our rules of practice. "The parties [however] relied on this transcript in their briefs and at oral

court made no finding with respect to the defendant's claim that the forfeiture of the vehicle constituted an excessive fine in violation of the eighth amendment to the United States constitution. This appeal followed.

I

The defendant first challenges the trial court's finding that the vehicle was seized as a result of a lawful arrest. Section 22a-250a (a) provides that "any vehicle used . . . as a means of committing a violation of any of the provisions of section 22a-208a, section 22a-208c, subsection (c) or (d) of section 22a-250 or section 22a-252, [may be] seized as a result of a lawful arrest . . . ." We must initially decide whether the defendant was lawfully arrested.

The defendant argues that on the date of the offense, he was charged only with § 22a-250 (b), an infraction violation, and, therefore, he could not be lawfully arrested because, pursuant to General Statutes § 51-164n (e), "[a] summons for the commission of an infraction . . . shall not be deemed to be an arrest . . . ." See *State* v. *Zyko*, 1 Conn. App. 517, 518, 473 A.2d 337, cert. denied, 193 Conn. 804, 475 A.2d 1104 (1984). The state counters that the notation of subsection (b) on the misdemeanor summons was an error that was properly cured by the filing of a substitute information and that this initial error should not preclude a finding that the arrest was lawful. We agree with the state.

" 'Before the commencement of trial, a prosecutor has broad authority to amend an information under Practice Book § 623.' "[7] *State* v. *Snead*, 41 Conn. App.

---

argument. While we do not condone this deviation from the rules of practice, we may disregard certain procedural irregularities and treat the case as the parties have treated and presented it." *Askinazi* v. *Askinazi*, 34 Conn. App. 328, 333 n.4, 641 A.2d 413 (1994).

[7] Practice Book § 623 provides in pertinent part that "[i]f the trial has not commenced, the prosecuting authority may amend the information, or add additional counts, or file a substitute information. . . ."

584, 590, 677 A.2d 446 (1996). Consistent with this authority, a prosecutor may file a substitute information where an error or defect exists in the summons provided that the substantive rights of the defendant are not prejudiced. In the present case, the state filed a substitute information to correct an obvious error in the summons. The officer recorded the statute number as § 22a-250 (b), but cited "prohibited dumping" as the offense. The statutes governing prohibited dumping, however, are codified in § 22a-250 (c)[8] and (d)[9] whereas § 22a-250 (b)[10] deals exclusively with prohibited littering. It is, thus, readily apparent that the officer made an error when recording the applicable statutory provision in the summons.

The defendant claims in his brief that despite this error, the state may charge him only with the statutory provision that appears on the face of the original summons. He points, however, to no authority, and we find none, that prohibits the state from charging a defendant with an offense merely because the statutory provision that codifies the offense was not properly recorded on the original summons. On the contrary, "[t]he fact that the officer may have not properly named the offense for which the arrest was made does not invalidate an arrest . . . if the officer had probable cause to make an arrest [on the correct charge]." *United States* v. *Story*, 463 F.2d 326, 328–29 (8th Cir.), cert. denied, 409 U.S. 988, 93 S. Ct. 343, 34 L. Ed. 2d 254 (1972). The trial court found that "there was, in fact, sufficient probable cause to arrest the defendant" for violating the statutes that prohibit unlawful dumping. We agree.

The requirement that a police officer have probable cause to make a misdemeanor arrest without a warrant

---

[8] See footnote 4.

[9] See footnote 5.

[10] See footnote 2 and accompanying text.

is found in General Statutes § 54-1f (a). That statute provides that "[a]n arrest for a misdemeanor can be made by [a police officer] . . . without previous complaint and warrant when the person arrested is taken or apprehended in the act . . . . The essential feature of an arrest of one taken or apprehended in the act . . . is that one or more of the acts constituting the crime must have occurred in the presence of the officer. An accused is lawfully taken or apprehended in the act if the circumstances observed by the officer preceding the arrest, viewed in the light of common knowledge and his own training and experience, *gave him probable cause to believe that a crime was being, or had just been, committed.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *DelVecchio*, 149 Conn. 567, 574–75, 182 A.2d 402 (1962), quoting General Statutes § 54-1f (a).

Our standard for reviewing a trial court's determination of the existence of probable cause is well established. "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the [court's] decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the . . . decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *State* v. *Trine*, 236 Conn. 216, 237–38, 673 A.2d 1098 (1996); *State* v. *Royce*, 29 Conn. App. 512, 516, 616 A.2d 284 (1992).

The trial court concluded that Gonzalez had probable cause to believe that the defendant was in the act of committing a crime. The trial court based its conclusion on its factual findings that (1) the defendant's vehicle contained in excess of one cubic foot of debris, (2) Gonzalez observed the defendant unloading "approxi-

mately fifteen to twenty feet" of debris from his vehicle, (3) the defendant intentionally backed his vehicle into a position so that he could dump debris from the rear of his vehicle, and (4) the defendant offered inconsistent statements to officers at the scene. We hold that these findings are not clearly erroneous and that the trial court properly found that the arrest of the defendant was lawful.

Because we determine that the defendant was lawfully arrested and that his vehicle was used as a means of committing a violation of § 22a-250 (c) or (d), we conclude that his vehicle was properly seized pursuant to § 22a-250a.

## II

The defendant also challenges the trial court's finding that, in a forfeiture action, the appropriate burden of proof is by a preponderance of the evidence.

Section 22a-250a (b) provides that in cases where the state seeks the forfeiture of a vehicle used in the violation of environmental laws, the state "shall have the burden of proving all material facts *by a preponderance of the evidence*." (Emphasis added.) The language of the statute is patently clear. "[I]f the language of a statute is plain and unambiguous, we need look no further than the words themselves . . . ." *State* v. *Denby*, 235 Conn. 477, 481, 668 A.2d 682 (1995). We conclude that the words in the statute are plain and unambiguous, and, therefore, the trial court appropriately required the state to prove the material facts by a preponderance of the evidence.

## III

The defendant last claims that the trial court improperly failed to find that the forfeiture of his vehicle constituted an excessive fine in violation of the eighth amendment to the United States constitution. Because

the defendant has not furnished us with an adequate record, we decline to review this claim.

The determination of whether a fine is excessive necessarily involves a question of fact properly reserved for the trial court. In a forfeiture proceeding where the state seeks to seize a vehicle, a finding of excessiveness must turn on a factual predicate, namely, the value of the seized vehicle. "In order to review an alleged error of law that has evidentiary implications, we must have before us the evidence that is the factual predicate for the legal issue that the appellant[s] [ask] us to consider." (Internal quotation marks omitted.) *Commissioner of Health Services* v. *Youth Challenge of Greater Hartford, Inc.*, 206 Conn. 316, 322, 537 A.2d 480 (1988).

At trial, counsel for the defendant sought to question the defendant as to the value of the vehicle. The trial court sustained an objection to the inquiry. Counsel, however, did not seek to make an offer of proof. "It is the appellant's burden to create an adequate appellate record to support his claim. . . . The defendant has failed to meet this burden. If he wanted to provide this court with an adequate appellate record, he should have presented an offer of proof. An offer of proof, properly presented, serves three purposes. First, it should inform the court of the legal theory under which the offered evidence is admissible. Second, it should inform the trial judge of the specific nature of the offered evidence so the court can judge its admissibility. Third, it thereby creates a record adequate for appellate review." (Citation omitted; internal quotation marks omitted.) *State* v. *Denby*, 35 Conn. App. 609, 618, 646 A.2d 909 (1994), aff'd, 235 Conn. 477, 481, 668 A.2d 682 (1995).

Moreover, in issuing its decision, the trial court stated that "[t]his court shall not rule on the constitutionality claim of the forfeiture statute in its ruling today . . . [because] I don't believe it's been properly presented

. . . ." The defendant filed a motion for articulation on June 13, 1995, in which he requested that the trial court articulate its decision "by stating the basis of its conclusion that it would not rule on the constitutionality claim of the forfeiture statute on the basis that it had not been properly presented." The trial court denied the motion. The defendant, however, failed to file a motion for review pursuant to Practice Book § 4054.[11]

Similar to the defendant in *Dime Savings Bank of Wallingford* v. *Cornaglia*, 33 Conn. App. 549, 554–55, 636 A.2d 1370, cert. granted, 229 Conn. 907, 640 A.2d 120 (1994), the defendant in the present case "did nothing to perfect the record. '[He] could have sought review by this court of the adequacy of the trial court's response pursuant to Practice Book § 4054.' . . . [He] elected not to do so." (Citation omitted.) "When a party is 'dissatisfied with the trial court's response to a motion for articulation, he [or she] may, and indeed under appropriate circumstances he [or she] must, seek immediate appeal . . . to this court via a motion for review.' " *Buchetto* v. *Haggquist*, 17 Conn. App. 544, 549, 554 A.2d 763, cert. denied, 211 Conn. 808, 559 A.2d 1141 (1989); see also *Barnes* v. *Barnes*, 190 Conn. 491, 493 n.2, 460 A.2d 1302 (1983).

"Because it is the appellant's responsibility to provide this court with an adequate record for review . . . we will not remand a case to correct a deficiency the appellant should have remedied." (Citations omitted; internal quotation marks omitted.) *Buchetto* v. *Haggquist*, supra, 17 Conn. App. 549; see also *Rogozinski* v. *American Food Service Equipment Corp.*, 34 Conn. App. 732,

[11] Practice Book § 4054 provides in pertinent part: "Any party aggrieved by the action of the trial judge as regards . . . articulation under Sec. 4051 may, within ten days of the issuance of notice of the order sought to be reviewed, make a written motion for review to the court, to be filed with the appellate clerk, and the court may, upon such a motion, direct any action it deems proper. . . ."

735 n.5, 643 A.2d 300 (1994). We, therefore, decline to review the defendant's eighth amendment claim because he has not provided us with an adequate record.

The judgment is affirmed.

In this opinion the other judges concurred.